NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jesse J. AVERHART, | |
| Plaintiff, | Civ. No. 10-6163 |
| v. | |
| | OPINION |
| COMMUNICATIONS WORKERS OF AMERICA, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter has come before the Court upon the Motion to Disqualify Counsel filed by Plaintiff Jesse J. Averhart ("Plaintiff"). (Docket Entry No. 67). Defendants Communications Workers of America ("CWA") and the Communications Workers of American Local 1033 ("CWA Local 1033") (collectively, "Union Defendants"), as well as Lawrence Cohen ("Cohen"), Christopher Shelton ("Shelton"), Hetty Rosenstein ("Rosenstein"), and Rae Roeder ("Roeder") (collectively, "Individual Defendants") oppose the motion. (Docket Entry Nos. 76, 78, 80). The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Plaintiff's Motion to Disqualify Counsel is denied.

## II. BACKGROUND

This case involves CWA Local 1033's officer elections, financial reporting and efforts to organize new members. Plaintiff alleges that CWA Local 1033's activities in these areas fall short of meeting its obligations under the CWA's constitution ("CWA Constitution") as well as federal law.

A. *The Parties*

Plaintiff is a member of Defendant CWA, a nationwide union with various subordinate affiliates. (Docket Entry No. 1 at ¶¶ 4, 8, 10, 14). The complaint ("Complaint") also lists a number of CWA's subordinate affiliates as defendants, including regional affiliate Communications Workers of America District 1 ("CWA District 1"), statewide affiliate Communications Workers of America New Jersey ("CWA New Jersey"), and local affiliate CWA Local 1033. (*Id*. at ¶¶ 8, 10, 12). CWA President Cohen, CWA District 1 Vice President Shelton, CWA New Jersey Director Rosenstein, and CWA Local 1033 President and Chairman Roeder are also defendants. (*Id*. at ¶¶ 7, 9, 11, 13).

B. *Allegations*

The Complaint alleges that CWA Local 1033 has failed to meet its contractual and fiduciary obligations. (*Id*. at ¶¶ 48-76). Count One pertains to the efforts of CWA Local 1033 to organize new members. (*Id*. at ¶¶ 48-58). Plaintiff alleges that while Roeder has served as president, CWA Local 1033 has not maintained an active organizing committee or organized any new members in violation of the CWA Constitution. (*Id*. at ¶¶ 50-53).

Count Two pertains to the financial reporting practices of CWA Local 1033. (*Id*. at ¶¶ 59-68). According to Plaintiff, upon learning that CWA Local 1033 "claims expenditures of millions of dollars of members (sic) dues for organizing when no unorganized workers have been

organized," Plaintiff sought information about CWA Local 1033's finances. (*Id*. at ¶ 21). While Plaintiff was able to obtain "generic" financial reports, CWA Local 1033 has not provided "full itemized financial or penny by penny accounting of disbursements of members (sic) dues" as required by the CWA Constitution and Title II of the Labor Management Reporting and Disclosure Act ("LMRDA"). (*Id*. at ¶¶ 19, 61).

Finally, Count Three pertains to CWA Local 1033's officer elections. (*Id*. at ¶¶ 69-76). According to the Complaint, during the 2005 officer elections, "identifying marks (serial numbers) were on the ballots allegedly because of error by the printer and purportedly too late to have the ballots reprinted." (*Id*. at ¶ 40). Additionally, members were incorrectly "advised they could sign only one candidate's nominating petition" under New Jersey Law, which created confusion that also affected the 2008 officer elections. (*Id*. at ¶ 41). Furthermore, during both the 2005 and 2008 officer elections, a single mailbox was used instead of two, and the mailbox selected was located approximately 17 miles from Local 1033. (*Id*. at ¶¶ 42, 43). Plaintiff contends that these procedures constituted a failure to provide secret balloting in violation of the CWA Constitution and Title IV of the LMRDA. (*Id*. at ¶¶ 69-71).

C. *Complaint Process*

According to Plaintiff, on November 11, 2008, five "charges complaints" were filed with Shelton against CWA Local 1033, including the charge that CWA Local 133 "has not established and maintained an active and functioning organizing committee during the entire 15 year tenure of [Roeder]." (*Id*. at ¶¶ 15, 16). Shortly thereafter, Shelton indicated that he would investigate the charges. (*Id*. at ¶ 23). In May 2009, Plaintiff was notified that Gail Masson-Massey ("Masson-Massey"), a CWA District 1 staff member, had been designated to investigate the charges, and not long after, Plaintiff was interviewed by Masson-Massey. (*Id*. at ¶ 24).

3

After inquiring about the status of the charges, Plaintiff was notified on June 15, 2010 that Masson-Massey's investigative report had been issued on March 29, 2010. (*Id*. at ¶¶ 26-27). That same day, Plaintiff received a copy of the report, which addressed only whether the charges were properly before Shelton. (*Id*. at ¶ 28). Shelton provided Plaintiff with 15 days to respond to the report, however, when Plaintiff submitted an appeal on June 25, 2010, it was dismissed as untimely. (*Id*. at ¶¶ 28-30).

### D. Instant Lawsuit

Plaintiff initiated this lawsuit by filing the Complaint with the Superior Court of New Jersey, Chancery Division. (Docket Entry No. 1). Defendants subsequently removed the case to federal court on November 24, 2010. (*Id*.). Plaintiff unsuccessfully sought to amend the Complaint to add new parties and claims. (Docket Entry Nos. 49, 50, 60, 61, 84, 85).

On October 25, 2012, Plaintiff filed the instant motion to disqualify counsel. (Docket Entry No. 67). The law firm of Weissman & Mintz, LLC ("Weissman") represents CWA, Cohen, Shelton, and Rosenstein, (s*ee* Docket Entry No. 1), and the law firm of Walter R. Bliss. Jr. ("Bliss") represents CWA Local 1033 and Roeder. (*See* Docket Entry No. 4). Plaintiff contends that joint representation of Union Defendants and Individual Defendants is impermissible under the New Jersey Rules of Professional Conduct (RPCs) and the LMRDA. (Docket Entry No. 67). For the reasons given below, Plaintiff's motion is denied.

### III. ANALYSIS

When making a motion to disqualify counsel, the "party seeking to disqualify carries a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 992 F. Supp. 241, 246 (D.N.J. Jan. 28, 1998). "Motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes

4

devastating implications." *Id*. Courts should, therefore, "hesitate to impose [disqualification] except when absolutely necessary." *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Savings, FBS*, 944 F. Supp. 341, 345 (D.N.J. July 1, 1996).

In this case, Plaintiff argues that disqualification of Weissman and Bliss is required (1) under RPCs 1.7 and 1.13, which govern concurrent conflicts of interest and the representation of organizational clients; and (2) under RPC 3.7, which generally prohibits lawyers from serving as witnesses at trial.

   A. *Concurrent Conflict of Interest*

Plaintiff first argues that disqualification of Weissman and Bliss is necessary under RPCs 1.7 and 1.13 because a concurrent conflict of interest exists. Under RPC 1.13, a "lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." RPC 1.13(a). "A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7." RPC 1.13(g).

Under RPC 1.7, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." RPC 1.7. A concurrent conflict of interest occurs if (1) "the representation of one client will be directly adverse to another client"; or (2) "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." *Id*. Plaintiff contends that a concurrent conflict of interest exists because (1) there is a significant risk that the representation of either Union Defendants or Individual Defendants will be materially limited by counsels' responsibilities to the other client; and (2) Weissman and Bliss, as counsel for Union Defendants, also represent

5

Plaintiff as a union member, and therefore, representation of Union Defendants is directly adverse to Plaintiff.

*1. Conflict of Interest Between Union Defendants and Individual Defendants*

The Court addresses first whether joint representation of Union Defendants and Individual Defendants creates a concurrent conflict of interest that necessitates disqualification. Plaintiff argues that disqualification is required generally as a result of the derivative nature of the lawsuit as well as under the LMRDA.

*a. Derivative Action*

First, Plaintiff contends that the instant lawsuit is a derivative action and disqualification is generally required in such cases. To advance this argument, Plaintiff relies on *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993), in which the Third Circuit expressed "no hesitation in holding that-except in patently frivolous cases-allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel." 2 F.3d at 1317. Specifically, Plaintiff relies on language stating that "if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board." *Id*. at 1316.

In *Bell Atlantic*, however, the Court found disqualification unnecessary because the plaintiffs had "alleged only mismanagement" and there were "no allegations of self-dealing, stealing, fraud, intentional misconduct, conflicts of interest, or usurpation of corporate opportunities by defendant directors." *Id*. at 1316. In his memorandums to the Court, Plaintiff appears to contend that Individual Defendants' handling of the appeals process constitutes serious charges of wrongdoing, which, therefore, require disqualification. (Docket Entry No. 82 at 5). The Court cannot say, however, that these allegations sufficiently demonstrate acts of self-

6

dealing, stealing, fraud, intentional misconduct, conflicts of interest, or usurpation of corporation opportunities that the Third Circuit identified as serious wrongdoing in *Bell Atlantic*.

Furthermore, a review of the pleadings does not undercover such allegations either. The Complaint contains allegations that funds were not spent on organizing activities in violation of the CWA Constitution and were, therefore, "misappropriated."[1] Again, the Court finds, however, that such claims fall short of the allegations of self-dealing and intentional misconduct discussed in *Bell Atlantic* that generally require disqualification in derivative actions. As such, the Court finds Plaintiff's arguments regarding *Bell Atlantic* do not favor disqualification at this time.

### b. LMRDA

Plaintiff also argues that a concurrent conflict of interest arises under the LMRDA. The Third Circuit has recognized that in cases arising under the LMRDA, a "union may not provide counsel for its officers in a suit brought against them if the interest of the union and its officers in the outcome of the case may be adverse . . . ." *Urichuck v. Clark*, 689 F.2d 40, 42 (3d Cir. 1982). Plaintiff argues that the interests of Defendants are adverse as a result of claims arising

---

[1] It is unclear from reading the Complaint exactly what claims Plaintiff asserts against Defendants. In the Complaint, Plaintiff alleges that "Defendant [CWA Local 1033] has not established and maintained an active and functioning organizing committee" or "organized unorganized workers either from the public or private sector workforce during the entire 15 year tenure of Defendant [Roeder]," yet CWA Local 1033 "represents organizing in generic financial audit reports as 'Organizing – Labor v. State.'" (Compl., Docket Entry No. 1, Attach. 2 at ¶¶ 16, 17). As such, Plaintiff appears to take issue with the expenditures of CWA Local 1033. However, Count 1 alleges that Defendants "failed to organize unorganized members," and Count 2 claims that Defendants have failed to fully disclose financial disbursements. As such, it is not clear whether Plaintiff has actually stated a claim for misappropriation of funds or whether Plaintiff merely seeks relief for failing to organize workers and failing to properly disclose financial activities. As it is not necessary to decide the issue at this time, the Court declines to decide whether Plaintiff has stated a claim for misappropriation of CWA Local 1033 funds.

under Titles I and V of the LMRDA. The Court addresses each separately, considering a potential conflict of interest arising under Title V first.

### i.  Title V

In *Urichuck*, the Third Circuit recognized in dicta that a "[c]onflict of interest between a union and its officers is most clearly apparent in a suit brought pursuant to Title V of the LMRDA charging union officers with pilfering union funds." *Id*. at 42-43. Under Title V, union officers "occupy a position of trust in relation to [the] organization and its members" and therefore, owe a duty "to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder . . . ." 29 U.S.C. § 501(a). When an officer is alleged to have violated these duties and the union or its governing board or officers "refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the [union], such member may sue" the officer. 29 U.S.C. § 501(b). No such claim may be brought, however, "except upon leave of the court obtained upon verified application and for good cause shown . . . ." *Id*.

Here, Plaintiff argues that he has stated a claim under Title V of the LMRDA and, relying heavily on the dicta in *Urichuck*, argues that disqualification is, therefore, necessary. At this time, however, the Court cannot agree. First, it is not clear that Plaintiff's pleadings are sufficient to state a claim under Title V of the LMRDA, or that Plaintiff sought leave of court before bringing such a claim as required by 29 U.S.C. § 501(b).

Additionally, even if Plaintiff has stated a claim under Title V, Plaintiff has simply not met his heavy burden and high standard of proof to show disqualification is warranted. While

the Third Circuit recognized in *Urichuck* that conflicts of interest are "most clearly apparent" in Title V claims "charging union officers with pilfering union funds," the discussion in *Urichuck* focused on instances in which union officers were alleged to have misappropriated union funds *for their own benefit*. Plaintiff simply has not made such allegations in this case. The Complaint alleges only that CWA Local 1033 has failed to expend funds on organizing activities and does not explain how any defendant benefitted from this action.

Of additional relevance, Union Defendants and Individual Defendants contend that funds were, in fact, lawfully spent and intend to defend against Plaintiff's claims by showing that they adequately met their obligations under the CWA Constitution. (Docket Entry No. 78 at 5). As such, the Court finds it is conceivable that the interests of Union Defendants and Individual Defendants are aligned in defending against a Title V claim and the Court, therefore, declines Plaintiffs' invitation to read *Urichuck* to prohibit joint representation of a union and its officers in any matter in which a Title V claim is alleged. Therefore, as Plaintiff relies solely on the language in *Urichuck* and offers no explanation for how the interests of the Union Defendants and Individual Defendants diverge in the present matter, the Court finds that Plaintiff has not met his burden of showing that disqualification is warranted at this time.

### c. Title I

Plaintiff also relies on *Urichuck* to support his contention that joint representation of Union Defendants and Individual Defendants is prohibited due to a concurrent conflict of interest arising under Title I of the LMRDA. In *Urichuck*, the Third Circuit recognized that joint representation of a union and its officers may be impermissible in a Title I case as "union officers could be guilty of a Title I violation without vicarious liability flowing to the union." *Urichuck*, 689 F.2d at 43. Therefore, in defending against such a Title I claim, a union could

make a number of arguments, including "that its officers were acting outside the scope of their authority and, therefore, that the union, at least is not liable to the plaintiff." *Id*. The Third Circuit reasoned that, in such an instance, "surely the interest of the union and the interest of its officers in the outcome of the litigation is adverse." *Id*. The issue, therefore, becomes whether the actions of the officers fall within the scope of their authority. *Id*.; *Mulligan v. Parker*, 805 F. Supp. 592, 595 (N.D. Ill. Oct. 9, 1992) ("If the officers' actions were outside of the scope of their official authority, then a conflict of interest exists between the union and the officers . . . ."). In these cases, the court "should subject the Title I pleadings to close scrutiny to determine if the defense that the co-defending officers acted *ultra vires* is realistically available to the union." *Urichuck*, 689 F.2d at 43.

    Here, the Court finds no facts to support Plaintiff's contention that an *ultra vires* defense is realistically available to the union. As Plaintiff's brief does not explain which actions of Individual Defendants were *ultra vires*, the Court reviews the factual allegations contained in the Complaint to determine if any of the Individual Defendants acted outside of the scope of his authority. First, as previously noted, the Complaint contains no factual allegations as to Rosenstein. As such, the Court finds no reason to believe that Rosenstein acted *ultra vires*. Second, the allegations involving Cohen and Shelton pertain solely to the appeals process. While Plaintiff is apparently dissatisfied with the outcome of the appeals process, there is no evidence that Cohen or Shelton lacked authority to participate in the appeals process as they did. Finally, the allegations concerning Roeder pertain to a failure to expend funds on organizing new members. Defendants contend that funds were, in fact, spent on organizing but that Plaintiff merely disagrees with Roeder's election to prioritize certain organizing activities over others. Absent any showing by Plaintiff as to how Roeder or any of Individual Defendants' actions were

*ultra vires*, the Court finds no evidence to suggest that the defense of *ultra vires* is realistically available to the union at this time. As such, Plaintiff has not met his burden of showing that disqualification is necessary due to a concurrent conflict of interest arising under Title I of the LMRDA.

        2. *Conflict of Interest Between Union Defendants and Plaintiff*

Next, Plaintiff argues that Weissman and Bliss must be disqualified because Plaintiff, as a member of the CWA, "is a current client of both counsel . . . ." (Docket Entry No. 67, Attach. 1 at 18-19). Plaintiff contends that, therefore, Weissman and Bliss are essentially representing both Plaintiff and Defendants. (*Id*.). In advancing this argument, Plaintiff argues that Weissman and Bliss are "bound by the fiduciary duty of a union to its members and this relationship creates a duty to union members similar to an attorney client relationship." (*Id*. at 18). Plaintiff cites no case law to support his contention that any fiduciary duty owed by a union's lawyer to a union member creates an attorney-client relationship; however, and the Court, finding none, declines to entertain Plaintiff's argument and grant the relief requested thereon.

  B. *Lawyer as Witness*

Finally, Plaintiff alleges that disqualification is also necessary under RPC 3.7. Rule 3.7 provides that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." RPC 3.7. "[A] witness is 'truly necessary' if there are no documents or other witnesses that can be used to introduce the relevant evidence." *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814, 2007 WL 2446529, *4 (D.N.J. Aug. 22, 2007). "[T]he party seeking to disqualify an attorney must do more than simply make representations that a lawyer is a necessary witness for the attorney to be disqualified." *Id*. at *3. Instead, the party "must put forth evidence that establishes the likelihood that the attorney will be a necessary

11

witness at trial." *Id*. "[I]f it is unclear from the record as to whether or not the attorney's testimony is necessary, the motion should be denied." *Id*.

Here, Plaintiff argues that "[g]iven the totality of the circumstances it is reasonable to name counsel as witnesses" as "[t]hey may have participated in giving legal advice or is (sic) aware of the activities that were detrimental to the organization as they relate to plaintiff's claim against the union and/or individual officer . . . ." (Docket Entry No. 67, Attach. 1 at 19). In short, Plaintiff has simply not provided evidence to support such a claim. Instead, Plaintiff relies on the conclusory statement that it is "reasonable" to name counsel as witnesses. As such, the Court finds no basis for disqualifying Weissman and Bliss under Rule 3.7.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to disqualify counsel is denied. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: April 9, 2013