NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE J. AVERHART,<br><br>                Plaintiff,<br><br>  v.<br><br>COMMUNICATION WORKERS OF AMERICA, AFL-CIO; LAWRENCE COHEN; CHRISTOPHER SHELTON; HETTY ROSENSTEIN; CWA LOCAL 1033; and RAE ROEDER,<br><br>                Defendants. | Civ. No. 10-6163<br><br>OPINION |

THOMPSON, U.S.D.J.

      This matter is before the Court upon the Motion for Summary Judgment of Defendants Communications Workers of America, AFL-CIO ("CWA"), Lawrence Cohen, Hetty Rosenstein, and Christopher Shelton (collectively, the "CWA Defendants") (Doc. No. 120) and the Motion for Partial Summary Judgment of CWA Local 1033 ("Local 1033") and Rae Roeder (collectively, the "Local 1033 Defendants") (Doc. No. 121).[1] Plaintiff Jesse Averhart ("Plaintiff") opposes both motions. (Doc. No. 129). The Court has decided the motions based on the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, Defendants' motions will be granted in full.

---

[1] The CWA Defendants and the Local 1033 Defendants will be collectively referred to as "Defendants."

## BACKGROUND

As Plaintiff and Defendants are already familiar with the facts of this case, this opinion will only include those facts relevant to the current motions.

Plaintiff is a member of Local 1033, a chartered local union comprised solely of public sector workers employed by various New Jersey state agencies who work in Mercer County. (Doc. No. 132, Joint Statement of Facts, at ¶¶ 1, 5). CWA is the parent union of Local 1033; some of its locals are comprised solely of public sector workers, like Local 1033; some are private sector only; and some locals, referred to as "mixed locals," are comprised of both private and public sector workers. (*Id*. at ¶¶ 4, 5). CWA and Local 1033 are governed by the Communications Workers of America Constitution ("CWA Constitution"). (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶ 14). Lawrence Cohen, Hetty Rosenstein, and Christopher Shelton are all officers of CWA. (*Id*. at ¶¶ 7, 9, 11). Rae Roeder was the president of Local 1033 from 1996 to July 2012. (Doc. No. 132, Joint Statement of Facts, at ¶¶ 6, 7).

In 2010, Plaintiff filed a complaint (the "2010 Complaint") in state court seeking declaratory and injunctive relief against the Defendants for alleged violations of the CWA Constitution. (*See generally* Doc. 1, Ex. A). Shortly thereafter, Defendants properly removed the 2010 Complaint to federal court. (*Id*.). In 2013, Plaintiff filed another complaint (the "2013 Complaint") against many of the same defendants. These cases have been consolidated. (Doc. No. 112, Consol. Order). After completing discovery for the claims stated in the 2010 Complaint, and pursuant to a scheduling order entered by the Court (Doc. No. 109, Am. Pretrial Sched. Order; Doc. No. 118, Letter Order), the CWA Defendants and the Local 1033 Defendants filed motions for summary judgment on the claims stated in the 2010 Complaint. (Doc. No. 120, CWA Defs.' Mot. Summ. J.; Doc. No. 121, Local 1033 Defs.' Mot. Summ J.).

A review of the parties' respective Local Rule 56.1 Statements of Material Facts Not In Dispute shows that the essential facts in this case are not disputed, and that the case comes down to whether Local 1033 has properly interpreted certain provisions of the CWA Constitution. (Doc. No. 129, Pl.'s Opp'n Br., at 3-5; Doc. No. 132, Reply to Pl.'s Gen. Objs., at 1). Accordingly, the claims in dispute are ripe for summary judgment.

## LEGAL STANDARD

A district court shall grant summary judgment, as to any claim or defense, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotext Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id*. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247–48 (emphasis in original).

In a motion for summary judgment, the party making the motion bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1), (4); *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted)); *see also Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (*citing Celotex*, 477 U.S. at 325)).  Here, Plaintiff is the nonmoving party, and he bears the ultimate burden of proof in the case, which is to prove that the Local 1033 Defendants violated the CWA Constitution and that the CWA Defendants aided and abetted the Local 1033 Defendants in doing so.  *See Exec. Bd. of Transp. Workers Union of Phila. Local 234 v. Transp. Workers Union of America, AFL-CIO*, 338 F.3d 166, 170–71 (3d Cir. 2003); *Wiatt v. Winston & Strawn LLP*, 838 F.Supp. 2d 296, 307 (D.N.J. 2012).  As part of the ultimate burden of proof in this case, Plaintiff must demonstrate that Local 1033's interpretation of the CWA Constitution is "patently unreasonable."  *See Exec. Bd. of Transp. Workers Union of Phila. Local 234 v. Transp. Workers Union of America, AFL-CIO*, 338 F.3d at 170–71.

      Once the party moving for summary judgment has made the initial showing of the basis of the motion, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  "[T]he non-moving party, to prevail, must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Cooper v. Sniezek*, 418 F.App'x 56, 58 (3d Cir. 2011) (citing *Celotex*, 477 U.S. at 322).  Thus, to

withstand a properly supported motion for summary judgment, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Instead, the non-moving party must "go beyond the pleading and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [the Rule] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson*, 477 at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) ("To raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255). In making this determination, however, the court may consider materials in the record other than those cited by the parties. Fed. R. Civ. P. 56(c)(3). Here, Plaintiff is proceeding *pro se*, and thus the Court has an obligation to construe his pleadings liberally; however, that obligation "does not render immune from . . . summary judgment claims that lack procedural or factual viability." *Metsopulos v. Runyon*, 918 F.Supp. 851, 857 (D.N.J. 1996); *King v. Cuyler*, 541 F.Supp. 1230, 1232 (E.D. Pa. 1982).

Both the CWA Defendants and the Local 1033 Defendants seek to dismiss all claims stated against them in the 2010 Complaint only, as discovery is still ongoing for the claims stated in the 2013 Complaint. (Doc. No. 121-2, Local 1033 Defs.' Mot. Partial Summ. J., at 2; Doc. No. 134, CWA Defs.' Reply Br., at 1). Hence, these two motions for summary judgment are essentially one motion for partial summary judgment of the consolidated case. Plaintiff argues that Defendants should not be able to move for partial summary judgment, and that they should instead be forced to move for summary judgment on the claims in the 2013 Complaint as well as the 2010 Complaint because of the Consolidation Order. (Doc. No. 129, Pl.'s Opp'n Br., at 2-3). Plaintiff cites no legal authority for this proposition. The plain language of Federal Rule of Civil Procedure 56(a) allows for motions for partial summary judgment: "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Plaintiff also seems to ignore the fact that this Court approved of the Defendants filing summary judgment on only the 2010 Complaint claims. (Doc. No. 109, Am. Pretrial Sched. Order; Doc. No. 118, Letter Order). Additionally, the parties have not completed discovery of the facts implicated in the 2013 Complaint claims. (Doc. No. 121-2, Local 1033 Defs.' Mot. Partial Summ. J., at 3). Accordingly, the Court will only address those claims that are ripe for summary judgment, which are the claims stated in the 2010 Complaint.

## ANALYSIS

### I. Nature of Plaintiff's Claims and Standard of Review of Local 1033's Interpretations of the CWA Constitution

The 2010 Complaint contains three counts. Each count is for breach of contract under the theory that the CWA Constitution imposes certain requirements that Local 1033 has not met. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 48-76). Each of the other defendants named in the 2010 Complaint—CWA, Lawrence Cohen, Christopher Shelton, Hetty Rosenstein, and Rae Roeder—

is liable, if at all, because he or she either directed Local 1033 to take an action in breach of the CWA Constitution or aided and abetted Local 1033 in breaching the CWA Constitution. Because the Court finds that Local 1033 has not violated the CWA Constitution, as explained below, summary judgment will also be granted against all claims against these other defendants. *See Wiatt*, 838 F.Supp. 2d at 307 (explaining that, in order for a party to be liable for aiding or abetting a breach of fiduciary duty, there first must have been such a breach).

The Supreme Court has held that 29 U.S.C. § 185 (commonly referred to as § 301 of the Labor-Management Relations Act of 1947, or LMRA) provides subject matter jurisdiction for federal courts to hear claims of union members that their local union has violated a provision of the parent union's constitution, as union constitutions are contracts between the parent and the local and § 301 of the LMRA provides subject matter jurisdiction over "[s]uits for violation of contracts between . . . labor organizations." *See Wooddell v. International Bhd. Of Elec. Workers, Local 71*, 502 U.S. 93, 99–103 (1991); *see also Lewis v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 771*, 826 F.2d 1310, 1314 (3d Cir. 1987). Thus, Plaintiff's claims against the Local 1033 are properly analyzed as claims for breach of contract wherein the CWA Constitution is a contract between CWA and Local, and Local 1033 is alleged to have breached that contract.

As discussed above, the facts of this case, by and large, are not disputed. Thus, whether there has been a breach of contract depends on the interpretation of the provisions of the CWA Constitution in question: if this Court finds that Defendants have interpreted their constitution correctly, then there can be no breach of contract, and Defendants' summary judgment motions will be granted. *See Phila. Musical Soc., Local 77 v. Am. Fed'n of Musicians of the U.S. and*

*Canada*, 812 F.Supp. 509, 515–16 (E.D. Pa. 1992) (granting summary judgment to parent union where the court determined that its interpretation was not incorrect).

Though Plaintiff's claims must be analyzed as breach of contract claims, this case is not a normal breach of contract case, and Defendants' interpretation of the CWA Constitution is due substantial deference. *See Exec. Bd. of Transp. Workers Union of Phila. Local 234*, 338 F.3d at 170; *Phila. Musical Soc., Local 77*, 812 F. Supp. at 515; *Dunleavy v. Radio Officers Union, Dist. No. 3, Nat. Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 1992 WL 210575 at *16 (D.N.J. 1992). This policy has been clearly explained by the Third Circuit in a similar case:

> Central to this appeal is the deference that courts accord to a union's interpretation of its own Constitution. With common ground eluding the parties as to most issues, they nonetheless agree that courts typically defer to a union's interpretation of its own Constitution and will not override that interpretation unless it is "patently unreasonable." Although this court has never explicitly defined "patently unreasonable," the standard is undeniably a high one as "courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." *Local 334, United Ass'n of Journeymen v. United Ass'n of Journeymen*, 669 F.2d 129, 131 (3d Cir. 1982) (citation omitted); *see also Stelling v. Int'l Bhd. of Elec. Workers*, 587 F.2d 1379, 1389 n.10 (9th Cir. 1978) ("The proper inquiry has been described as 'whether there was arguable authority for the officer's act from the officer's viewpoint at the time, not from a court's more sophisticated hindsight.'"(citation omitted).

*Exec. Bd. of Transp. Workers Union of Philadelphia Local 234,* 338 F.3d at 170. Additionally, it is Plaintiff who bears the burden of demonstrating that Local 1033's interpretation of the CWA Constitution is patently unreasonable. *Phila. Musical Soc., Local 77*, 812 F. Supp. at 515 (citing *Local 334 v. United Ass'n of Journeymen,* 669 F.2d 129, 131 (3d Cir. 1982)). Whether the plaintiff has met this burden is a purely legal question. *Id*. A union's interpretation of its constitution also warrants deference if it is consistent with the union's past practices. *Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*, 940 F.Supp. 779, 782 (E.D.Pa. 1996); *Phila. Musical Soc., Local 77*, 812 F. Supp. at 515.

## II.     Local 1033's Interpretations of the CWA Constitution

As established above, Plaintiff's claims are all contingent on his being able to show that Local 1033's interpretations of certain terms and provisions of the CWA Constitution are patently unreasonable. Each disputed term and provision is dealt with in turn below.

### A.     Organizing

One of Plaintiff's key contentions is that Article XIII, § 9 of the CWA Constitution requires every local to engage in "organizing," and that Local 1033 has not met this obligation. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 50-53). Local 1033 responds that it does engage in organizing and has organized several thousand new members over the past fifteen years. (Doc. No. 121-2, Local 1033 Defs.' Mot. Partial Summ. J., at 5). All of the new members that Local 1033 has organized in this time period are either new employees or were formerly public employees who were not full-fledged members of Local 1033 but had been agency fee payers of Local 1033. (*Id*.). Under the New Jersey Employer-Employee Relations Act, public employees of the State of New Jersey are required to pay the local union representing public employees where they are employed an agency fee for the costs of representing those employees if they are not members of the local union. *See* N.J.S.A. 34:13A-5.5. Local 1033 is the local union for these purposes for the public employees of many state agencies in Mercer County.[2] (Doc. No. 132, Joint Statement of Facts, at ¶ 22). Local

---

[2] In the charter granted to Local 1033 by the CWA, Local 1033 is given jurisdiction over:

> [A]ll work performed by employees eligible for Union membership who are employed by: the Administrative/Clerical, Professional, Primary and High Level Supervisory units in the County of Mercer in the following departments: Banking, Defense, Education, Insurance, Law and Public Safety, Public Advocate, Treasury and State . . . ; those parts of the Department of Transportation in the Division of Motor Vehicles, including work formerly performed by that Division within the Department of Law and Public Safety now in other Division of the Department of Transportation at Motor Vehicles work sites, including the Administrative Clerical, Professional, Primary and Higher Level bargaining units in Mercer

1033's organizing efforts have been directed at turning agency fee paying public employees in the agencies in its jurisdiction into Local 1033 members. (*Id.* at ¶ 24).

Plaintiff does not dispute that Local 1033 has turned many agency fee payers into full members (*Id.* at ¶ 29), but he responds that this form of organizing is merely internal organizing and that the CWA Constitution requires Local 1033 to also engage in external organizing. (Doc. No. 129, Pl.'s Opp'n Br., at 6). By external organizing, Plaintiff apparently means that Local 1033 should bring private sector employees and public employees who are not already agency fee payers of Local 1033 into its membership ranks. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶ 53). Though Plaintiff cites to numerous provisions of the CWA Constitution, to speeches given at the CWA Annual Convention of 1996, and to a resolution adopted at the CWA Annual Convention of 2006, none of these sources support his interpretation of the term "organizing." (Doc. No. 129, Pl.'s Opp'n Br., at 6). The only support, scant as it is, that Plaintiff finds for the proposition that the CWA Constitution requires every local to engage in both internal and external organizing is the CWA Uniform Operating Procedures Manual. (*Id.*) Section 20 of that document lays out organizing guidelines, and states, in pertinent part:

> The Vice President shall supervise and direct all organizing (internal and external) in his/her District and shall:
> 1.   develop and carry out internal organizing programs designed to bring all existing Locals up to or above ninety percent (90%) membership development;
> 2.   develop and carry out external organizing programs for organizing the unorganized into new CWA bargaining units. The "unorganized" includes any group of workers not presently organized under a contract held by another ALF-CIO affiliate.

(Doc. No. 129-3, Pl.'s Supp. Statement of Facts, at 6-7).

---

County; and such other jurisdictions as may be assigned by the Executive Board of the Union.

Doc. No. 132, Joint Statement of Facts, at ¶ 224.

There is nothing about this discussion of the CWA Vice President's responsibilities for developing and carrying out internal and external organizing that suggests that a local union has a duty to engage in both internal and external organizing. Plaintiff has not shown that Local 1033's interpretation of the term organizing as used in the CWA is patently unreasonable. In fact, it is apparent that Plaintiff's own interpretation is patently unreasonable because it ignores the basic concept of a local union's jurisdictional assignment. *See, e.g.*, *United Food and Commercial Workers Int'l Union Local 911 v. United Food and Commercial Workers Int'l Union*, 301 F.3d 468, 471–72, 478–79 (6th Cir. 2002) (describing a dispute between a local union and its parent as to which local's jurisdiction the employees of a new store would be assigned). The CWA Constitution lays out the following framework for the jurisdictional assignment of locals: Article IX, § 4(a) gives the CWA Executive Board the authority to issue charters for locals, and Article XIII, § 1 states "(a) A Local shall be a unit of the Union and shall be chartered by the Executive Board. . . . (c) Local jurisdiction shall be assigned and described at the time Charters are issued. (d) No Local Charter shall be issued which grants jurisdiction in conflict with that of another Local except as herein provided." (Doc. No. 125, Ex. 2, at 11, 19). Thus, Local 1033's jurisdiction is limited to what has been assigned to it by the CWA Executive Board in its charter, and its charter has been crafted so as not overlap or conflict with the jurisdiction of any other Local. Per the terms of the CWA Constitution and the Local 1033 Charter, the universe of workers who are eligible to become a member of Local 1033 is limited to public employees of certain state agencies located in Mercer County. Local 1033 is legally prohibited from external organizing as Plaintiff would have it: there are no private sector workers or public employees who are not already agency fee payers of Local 1033 in its jurisdiction. Even if the CWA itself does engage in external organizing, it is clearly not the responsibility or duty of Local 1033 to make workers falling outside of its

jurisdictional assignment into Local 1033 members. Accordingly, Local 1033 has fulfilled its obligation, such as it is, to "organize" by turning agency fee payers within its jurisdiction into members. Plaintiff cannot maintain any claims against any Defendant that are dependent on an interpretation of the CWA Constitution as requiring a local to engage in external organizing, and so the Court will grant Defendants' summary judgment on all such claims.

      B.      Organizing Committee

In Count One, Plaintiff claims that Local 1033 has violated the CWA Constitution by failing to engage in external organizing and by failing to maintain an organizing committee. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 50, 52, 53). As discussed above, Defendants will be awarded summary judgment on the failure-to-organize claim. The failure-to-maintain-an-organizing-committee claim stems from Article XIII, § 9(e) of the CWA Constitution, which states "The authority, duties and obligations of chartered Locals . . . shall be: To establish and maintain actively functioning organizing, education, legislative-political, community services, women's, equity, and such other committees as may be necessary to effectuate the policies of the Local, the Union and the District, State or Area." (Doc. No. 125, Ex. 2, at 21). Local 1033 admits that its Bylaws also provide that it shall have, among other standing committees, an "Organizing Committee." (Doc. No. 132, Joint Statement of Facts, at ¶ 36). Local 1033 further admits that it does not have a standing committee formally referred to as the "Organizing Committee." (*Id*. at ¶ 40). Local 1033 argues, however, that it has a Membership Committee, and that this committee does the work of organizing. (*Id*.). As discussed above, Local 1033 has accomplished a great deal of organizing over the past fifteen years, converting thousands of public employees in Mercer County who were merely agency fee payers into members of Local 1033. (Doc. No. 132, Joint Statement of Facts, at ¶¶ 24-29). Thus, it is clear that Local 1033 has fulfilled its obligation, to the extent it has such

an obligation, to have a committee that does organizing work. Whether a local union calls a committee that engages in organizing activities the "Organizing Committee" or the "Membership Committee" is precisely the sort of issue on which the federal courts should defer to the local's own judgment unless that judgment is patently unreasonable. Plaintiff has shown, at most, a technical, semantic peccadillo; this does not amount to a showing that Local 1033's interpretation of the CWA Constitution is patently unreasonable. Accordingly, the Court will grant summary judgment for Defendants on the failure-to-maintain-an-organizing-committee claim.

      C.      Financial Records

Plaintiff makes essentially two claims in Count Two: that Local 1033 has violated its obligation under the CWA Constitution to provide a "penny by penny itemization of disbursements of how members' dues are expended" and that Local 1033 has improperly used funds because it claims to have used funds for organizing when it has not, in fact, done any organizing. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 65, 67). As has been established above, Local 1033 has engaged in organizing, and Plaintiff admits that Local 1033 has used the funds designated for organizing for internal organizing expenses such as "rallies," "training," "printing," and "advertising." (Doc. No. 132, Joint Statement of Facts, at ¶¶ 44-45). Thus, summary judgment will be granted for Defendants on Plaintiff's misappropriation-of-funds claim.

Plaintiff's first claim in Count Two stems from Article XIII, § 9(m) of the CWA Constitution, which states that a local must "maintain adequate files and records and have made an annual audit of the financial records of the Local by competent persons; make available Local financial statements to the membership at least annually; [and] furnish to the Union's Secretary-Treasurer in acceptable form, an annual financial statement." Plaintiff and Defendants agree that Local 1033 fulfills these three basic obligations. (Doc. No. 132, Joint Statement of Facts, at ¶¶

49-62). Plaintiff's contention seems to be that, if Local 1033 were a mixed local, having both private and public sector employees, it would be subject to the more stringent financial disclosure requirements contained in Title II of the Labor Management Reporting Disclosure Act ("LMRDA"), and that Local 1033 has wrongfully avoided becoming a mixed local by refusing to bring private sector workers into its membership so that it would not be subject to Title II of the LMRDA. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 61-64). This theory is premised on Plaintiff's interpretation of Local 1033's obligation to "organize," which has already been disproven. As such, Plaintiff has offered no evidence to rebut Defendants' showing that Local 1033 fulfills its actual financial disclosure obligations under the CWA Constitution, and therefore Defendants will be awarded summary judgment on this claim as well.

  D.   Elections

Plaintiff's makes two claims pertaining to Local 1033's elections in Count Three; the source for these claims is Article XIII, § 9 of the CWA Constitution, which states that each local has a duty to "hold Local elections by secret ballot with provision of reasonable opportunity for all members to vote in accordance with the Bylaws or Rules established by the Local and this Constitution." Plaintiff's first claim is that Local 1033's procedures for the Election of Officers (the "Election") held in 2005 and 2008 were so rife with improprieties that they amounted to a violation of the CWA Constitution. (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 40-44, 73). The allegations that Plaintiff used to support this claim in the Complaint are: (1) that there were illegal identifying marks on the ballots in the 2005 Election (*Id*. at ¶ 40); (2) that "[d]uring the 2005 Election . . . , members were illegally advised that they could sign only one candidate's nominating petition" (*Id*. at ¶ 41); (3) that for both the 2005 and the 2008 Election, Local 1033 selected a Post Office located 17 miles from the Local to receive the ballots, and only one P.O. Box was used

when two should have been used to differentiate between returning ballots and undeliverable ballots (*Id*. at ¶¶ 42-43); and (4) that during the 2008 Election, Local 1033 took five hundred members off of their jobs using employer paid leave days and gave them free movie tickets (*Id*. at ¶ 44).

Defendants have rebutted each of these allegations with the following facts from discovery: (1) that though there were identifying marks on the ballots in the 2005 Election, the printer's error was discovered so late in the process that new ballots could not be printed, and so the ballots and the return envelopes were shuffled so that the ballots could not be traced to their voters (Doc. No. 124, Ex. 3, Maurer Certification, at ¶¶ 50-51; (2) that Local 1033 did advise its members in 2005 that they could only sign one candidate's nominating petition because that was its understanding of New Jersey election law at the time, and the imposition of that rule did not affect any of the nominations at the time (*Id*. at ¶¶ 52-54); (3) that Local 1033 chose the Ringoes Post Office, located 17 miles from Trenton, to receive the ballots because the Local was a prime customer of the Ringoes Post Office; that Local 1033 knew from experience that mail was received there faster than at the Trenton Post Office; that even though only one P.O. Box was used for the 2005 Election, there was no real danger that the ballots had been tampered with "on a regular basis under the guise of retrieving undeliverable ballots;" and that Local 1033 used two P.O. Boxes in the 2008 Election because that is the better practice (*Id*. at ¶¶ 57-59); and (4) that shop stewards were offered a free movie ticket as a reward for attending a training session and workshop as part of a new contract in 2008, and this incentive was not connected to the elections. (Doc. No. 121-2, Local 1033 Defs.' Mot. Partial Summ. J., at 27-28).

Though Plaintiff disputes some of the facts, he has not offered evidence of his own to support his allegations. As such, he has failed to show that there is a genuine dispute as to the

facts concerning Local 1033's justifications for the alleged improprieties of the 2005 and 2008 Election of Officers.  *See Cooper v. Sniezek*, 418 F.App'x 56, 58 (3d Cir. 2011) (citing *Celotex*, 477 U.S. at 322).  Moreover, Plaintiff has failed to show that Local 1033 was patently unreasonable in interpreting its obligations under Article XIII, § 9 of the CWA Constitution in the course of the 2005 and 2008 Election of Officers; accordingly, Defendants will be granted summary judgment on this claim.

In Count Three, Plaintiff also makes an argument concerning the elections that is similar to his argument in Count Two: that Local 1033 would be subject to stricter election laws if it were a mixed local, but that it had improperly refused to bring in private sector members to strategically avoid making itself subject to these laws.  (Doc. No. 1, Ex. A, Pl.'s Compl., at ¶¶ 71-75).  Again, because this claim is premised on Plaintiff's faulty interpretation of the term "organize," Defendants will be granted summary judgment on it.

## CONCLUSION

For the reasons stated above, Defendants' Motions will be granted.  An appropriate order will follow.

                                            */s/ Anne E. Thompson*
                                            ANNE E. THOMPSON, U.S.D.J.

Date: January 6, 2015